UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Terrell Harris,<br><br>     Plaintiff,<br>v.<br><br>Hunter Warfield, Inc.,<br><br>     Defendant. | Case No. 0:21-cv-1593<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by Defendant and its collection agents in their illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION

3. Jurisdiction of this Court arises under U.S.C. § 1692k(d) and 28 U.S.C. § 1367 for supplemental state law claims.

4. Venue is proper because the acts and transactions occurred here, Plaintiff formerly resided in Minnesota, and Defendant transacts business here.

5. Defendant has transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff via the telephone and mails for a debt that was allegedly incurred while Plaintiff was located within and permanently residing within the State of Minnesota.

6. Defendant has transacted business within the State of Minnesota by operating a collection agency, making collection calls into Minnesota, and directing debt collection activities to Minnesota.

## PARTIES

7. Plaintiff Terrell Harris (hereinafter "Plaintiff") is a natural person who resides in the City of Mason, County of Warren, State of Ohio, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

8. Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

9. Defendant Hunter Warfield, Inc., (hereinafter "Defendant") is a collection agency operating from an office address of 4620 Woodland Corporate Blvd., Tampa, FL 33614, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## **FACTUAL ALLEGATIONS**

10. Within one year immediately preceding the filing of this complaint, Defendant attempted to collect from Plaintiff a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, an obligation for an apartment rental application in the State of Minnesota.

11. Plaintiff disputes this alleged debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect to this debt and to the claims made herein.

### *Defendant's Illegal Add-On Charges To Debt*

12. Sometime on or around October 2017, Plaintiff incurred an alleged debt to Indigo at BCS Apartments in Bloomington Minnesota("Debt") which was a $125 application fee for apartment that the Plaintiff wanted to rent.

13. Indigo rejected Plaintiff's apartment application and asserted that the "free" application was only free when it accepted an application.

14. Plaintiff disagreed with this assertion, never agreed to pay an application fee of $125 and refused to pay this alleged debt since Indigo had represented to him that the application was "free."

15. In June 2021, Plaintiff reviewed his consumer credit reports and noted an entry from Defendant on his Equifax report that indicated that this $125 apartment rental fee debt with Indigo had now increased to $151.

16. Defendant repeatedly added interest and/or late fees on this alleged debt, increasing the debt from its original amount of $125 up to $151.

17. On or about June 7, 2021, Plaintiff called Defendant to speak with it about this alleged debt to Indigo.

18. During the course of this phone call, Plaintiff negotiated this debt from the claimed $151 down to $130 with the Defendant and ultimately paid the $130 or $5 more than the original alleged amount.

19. The FDCPA prohibits to addition of any amount over and above the principal amount of the debt unless that additional amount is permitted by the contract underlying the debt or otherwise permitted by law.

20. Plaintiff never agreed to pay interest in any amount on this alleged debt because he did not agree that he even owed the alleged debt for the "free" apartment rental application. See Tate v. Ballard, 243 Minn. 353, 360, 68 N.W.2d 261, 266 (1954) ("Liability for interest is purely contractual, and a person is not chargeable therewith unless he has agreed to its imposition. County of Redwood v. Winona & St. Peter Land Co., 40 Minn. 512, 41 N.W. 465, 42 N.W. 473.")

21. There is no agreement between Plaintiff and Indigo underlying this debt that permitted these collection fees by Defendant and these fees are not otherwise permitted by law.

22. Defendant's demands from Plaintiff for payment for amounts not due and owing on this judgment obligation was fraud, because it intended that Plaintiff would rely on its representations as to the amount of additional interest on this judgment

obligation, and Plaintiff in fact relied on those material misrepresentations to his detriment.

23. It was a false and deceptive debt collection practice for Defendant to misrepresent the amount due and owing by Plaintiff for this debt.

24. Defendant's addition of $26 in late charges to Plaintiff's alleged debt to Indigo was also a violation of numerous and multiple provisions of the FDCPA.

25. The above-described communications and conduct from Defendant toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### *Summary*

26. The above-described collection conduct by Defendant in its efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

27. These collection actions taken by Defendant, and the collection employees employed by Defendant, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

28. These violations by Defendant were knowing, willful, negligent and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

29. Defendant's collection efforts with respect to this alleged debt from Plaintiff caused

Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

30. Defendant's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant's collection efforts because Plaintiff could not adequately respond to the Defendant's demand for payment of this debt.

### *Respondeat Superior Liability*

31. The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of Defendant who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

32. The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

33. By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

34. Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the federal law cited herein in its attempts to collect this debt

from Plaintiff.

## TRIAL BY JURY

35. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 *et seq.*

36. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

37. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

38. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant herein.

## COUNT II.

## FRAUD

39. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

40. The Minnesota Court of Appeals has held:

> A prima facie case of fraudulent misrepresentation requires the plaintiff to establish that
>
>> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the other party suffered pecuniary damage as a result of the reliance.
>
> *Hoyt Props., Inc.,* 736 N.W.2d at 318 (quotation omitted). "A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading." *M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 289 (Minn.1992).

Beckman v. Wells Fargo Bank, N.A., No. A15-1819, 2016 WL 5640664, at *5–6 (Minn. Ct. App. Oct. 3, 2016).

41. During the collection communications transmitted by Defendant to Plaintiff in the past year, Defendant repeatedly and falsely represented to that Plaintiff was obligated to pay interest and other charges on these obligations in excess of the amounts permitted by Minnesota law, when, in material fact, Plaintiff was not so obligated.

42. Defendant knew that the alleged debt it was attempting to collect from Plaintiff had been padded with illegal and impermissible collection fees, and that therefore Plaintiff had no legal obligation to pay it, but it withheld that fact from Plaintiff and instead told Plaintiff that he must pay it.

43. As a licensed Minnesota collection agency, Defendant knew or should have known that it had no right to add impermissible collection fees under the FDCPA or fees that were not provided under the contract or otherwise permitted by law. See <u>Kojetin v. C U Recovery, Inc.</u>, 212 F.3d 1318 (8th Cir. 2000).

44. Plaintiff has suffered actual pecuniary damages as a result of this Defendant's deliberate fraudulent misrepresentations of these material facts.

45. Defendant's misrepresentations that Plaintiff owed this amount, when Plaintiff in fact did not, were material misrepresentations of fact because they influenced Plaintiff's judgment and decisions regarding entering into the agreement to repay it.

46. Defendant knew that its misrepresentations to Plaintiff were false at the time Defendant made them.

47. Defendant's misrepresentations were made intending that Plaintiff would rely on them.

48. Plaintiff reasonably relied upon and acted upon Defendant's misrepresentations and suffered damages in wasted time seeking legal advice and the costs of litigation in this matter to vindicate Plaintiff's rights under the FDCPA, as well as other damages in that he overpaid by at least $5 on this alleged debt.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

- for an award of actual and statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15

U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff;

- for actual damages for fraud that were directly caused by relying on the fraudulent misrepresentations made by Defendant to Plaintiff regarding this alleged debt;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: July 5, 2021

By: s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
2828 University Ave. SE, Suite 202
Minneapolis, Minnesota 55414-4127
Telephone: (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

| | |
|---|---|
| STATE OF OHIO | ) |
| | ) ss |
| COUNTY OF WARREN | ) |

Pursuant to 28 U.S.C. § 1746, Plaintiff Terrell Harris verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Jul 5, 2021          *[signature]* Terrell D Harris (Jul 5, 2021 18:13 EDT)
_____    _____
Date                 Signature

-11-

# NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

<u>Miller v. Lankow</u>, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones**.  The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary. Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible. For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible. Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.** You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand. Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI. Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.** You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.** This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.** Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.** If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court. I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.** If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention. Thank you for your anticipated cooperation in this vital matter.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: July 5, 2021

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
2828 University Ave. SE, Suite 202
Minneapolis, Minnesota 55414-4127
Telephone:  (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*